WEST's Lessee *vs.* HUGHES *et al.*

A *fi fa.* issued by a justice of the peace on a judgment recovered on warrant held to be void for the want of a return day, and no title passed under a sale of the land made in pursuance thereof.
Where a grant of a tract of land operated by relation from the date of the certificate of survey, and vested the legal title in the land in the grantee on the day of the survey.

EJECTMENT for a tract of land called *Jarrett's Disappointment,* lying in Harford county. Defence was taken on warrant, and plots were made.

1. The plaintiff, at the trial, in support of the issue on his part, produced and read in evidence to the jury, a patent granted to the lessor of the plaintiff on the 20th of May 1797, for the tract of land called *Jarrett's Disappointment,* for which the ejectment was brought, surveyed on the 8th of June 1795, in virtue of a proclamation warrant issued on a tract of land called *Little Contestable,* being a resurvey on *Amos and Myers's Puzzle,* containing 115½ acres.

The defendants offered in evidence to the jury, a warrant issued by *Nathan Smith,* who, it is admitted, was at the time a justice of the peace for Harford county, duly commissioned and sworn, and in which said county, it is admitted, the defendants in the said warrant mentioned, reside, and did reside at the time of issuing the said warrant, which warrant is as follows, to wit: "Harford county, sc. Arrest *David West* and *Benjamin West,* and them have before a justice of the peace for said county, to answer *Samuel Bond* in a plea of debt. Given under my hand and seal this third day of April 1797.

*N. Smith,* *(L. S.)*

To any Constable."

The defendants then offered evidence to prove, that *David West,* one of the defendants mentioned in the said warrant, and who is the lessor of the plaintiff in this cause, was arrested by one of the constables of the said county, and appeared under the said warrant before *Nicholas Day M'Comas,* who, it is also admitted, at that time was, and still is, one of the justices of the peace for said county, duly commissioned and sworn; who, on the 9th day of May 1797, gave judgment against the said *David West* in the following words, to wit: "Judgment against the defendant for three pounds nineteen shillings debt, with interest

from the 9th of January 1797, until paid, and four

shillings and four pence half penny costs, this 9th of May 1797.　　　　　　*Nichs. D. M'Comas.*"

That on the 12th of May 1797, *Thomas S. Bond,* who it is also admitted at that time was, and still is, one of the justices of the peace for the said county, duly commissioned and sworn, issued an execution on the said judgment in the words following, to wit: "Sheriff of Harford county: Make and levy as much of the goods and chattels, lands and tenements, of *David West,* as will satisfy and pay *Samuel Bond* three pounds nineteen shillings debt, with interest from the 9th of January 1797, until paid. and four shillings and four pence half penny costs, and all additional costs, agreeable to a judgment hereto annexed, rendered by *Nicholas D. M'Comas,* Esquire, and this shall be your authority. Given under my hand and seal this 12th day of May 1797.

　　　　　　　*Thos. S. Bond,* (L. S.)"

That the said execution was delivered to the sheriff of the said county, who on the 13th day of May 1797, laid the same on the land in the patent aforesaid mentioned, and for which this ejectment is brought; and that on the 19th of May 1797, the same land was exposed to public sale by the sheriff aforesaid, and was purchased by *Jesse Jarrett,* he being the highest bidder for the same; and on the 27th of August 1798, the said *Jarrett* obtained from the said sheriff, *(Robert Amos, junior,)* a deed for the said land, reciting, "that whereas the said *Robert Amos,* as sheriff of the county aforesaid, by virtue of a writ of *fieri facias,* to him directed from *Thomas S. Bond,* Esquire, one of the justices of the peace for the county aforesaid, on a judgment obtained by *Samuel Bond* against *David West,* did on the 19th of May 1797, expose to public sale all that tract or parcel of land, situate in the county aforesaid, called *Jarrett's Disappointment,* the property of the said *David West,* and which said land was, by the said *Jesse Jarrett,* on the day aforesaid, purchased for the sum of 14*l.* 8*s.* 9*d.* current money, he being the highest bidder for the same," &c.

MAY 1800.

West
vs.
Hughes.

The plaintiff then prayed the opinion of the court, and their direction to the jury, that the sale made under the proceedings aforesaid was void; and that no title could be made under the same, there being no return days to either the warrant, or the execution issued on the judgment obtained as aforesaid.

CHASE, Ch. J. (a). The court are of opinion, that the execution issued by *Thomas S. Bond* as aforesaid, is void for the want of a return day, and that no title can be made under the sale made in pursuance thereof. The defendants excepted.

Relation of a grant to the certificate of survey, &c.

2. The plaintiff, to make title to the land in the declaration of ejectment mentioned, shewed in evidence to the court and jury, that on the 8th of February 1794, one *Jesse Jarrett* obtained a warrant of resurvey upon a tract of land called *Amos and Myers's Puzzle;* that in virtue of that warrant a certificate of resurvey was made and returned to the land office for the said *Jarrett,* bearing date the —— day of January 1795, wherein the land so surveyed, with the vacancy thereby added, was called *Little Contestable;* that the said *Jarrett* having failed to pay the caution money for the vacant land contained in the said certificate within the time prescribed by law, *David West,* the lessor of the plaintiff, upon the 4th of May 1795, obtained a proclamation warrant to affect the said vacant land; that on the 8th of June 1795, the said *West* procured a certificate to be made and returned to the land office, in virtue of the said proclamation warrant, upon which certificate the said *West* afterwards compounded, and on the 20th of May 1797, obtained a patent for the land, by the name of *Jarrett's Disappointment,* which land is located upon the plots in the cause.

The defendants then offered evidence to the court and jury, that the said *Jesse Jarrett,* in the year 1784, purchased of the intendant of the revenue of the state of Maryland, a tract or parcel of land, then held under lease and within the reserve of —— manor in Harford county, called *The Hills of Poverty;* that in

(a) *Duvall,* and *Done,* J. concurring.

virtue of the said contract a survey was made of the said land on the 22d of January 1789, and a certificate returned to the land office on the 11th of February 1789, in the name of the said *Jarrett*, of a tract or parcel of the reserve land in Harford county, containing 1832 acres, and called *Contestable Manor*; that the said certificate being caveated, the judge of the land office, on the 28th of July 1794, made an order "that the surveyor correct the said certificate by excluding such part of the land therein called *Beautiful Plain*, patented to *Samuel Richardson*, and that he return a corrected certificate for the remaining quantity." That on the 9th of February 1795, the corrected certificate, made on the 26th of January 1795, containing 1483 acres, was returned; and on the 20th of May 1795, the judge of the land office, at the instance of the said *Jarrett* himself, made a second order for correcting the said certificate, viz. "The party having suggested that a mistake was committed in executing the former order, it is ordered, that if a mistake shall appear, the same be corrected by the surveyor of Harford county, by making his correction agreeably to the said former order." That on the 18th of May 1796, another corrected certificate, made on the 2d of May 1796, containing 1392 acres, was returned; that on the 13th of July 1796, the above named *David West* caveated the last mentioned certificate, and on the 20th of September 1796, the judge of the land office again made an order for correcting the said *Jarrett's* certificate, viz. "The chancellor proceeded to a hearing of the caveat against this certificate, in course of which *David West's* certificate of *Jarrett's Disappointment* was produced. The said certificate is endorsed with an order directing it to be corrected, by excluding such part as lies, according to the plot for illustration in the cause, and the recorrected certificate of *Contestable Manor*, within the lines of said *Contestable Manor*. On the hearing of the caveat of *Jarrett's Disappointment*, it was not suggested that this certificate, which is the recorrected certificate aforesaid, was erroneous;

MAY 1800.

West
vs.
Hughes.

Various orders of the judge of the land office for correcting and recorrecting a certificate of survey on hearing a caveat, &c.

MAY 1800.

West
vs.
Hughes.

Whenever the
same land is in-
cluded in the cer-
tificates of both
parties to a caveat,
it is considered
that each has ca-
veated his antago-
nist.

and the present caveat amounts in fact to an applica-
tion for a reconsideration of the caveat against *Jar-
rett's Disappointment;* for according to the practice of
this office, and agreeably to the principles of com-
mon sense, whenever the same land is contained in
the certificates of both parties to a caveat, it is con-
sidered, that each of the parties has caveated his
antagonist. On this ground then, the certificate of the
recorrected certificate of *Contestable Manor* is to be
considered as having been caveated by *David West*, as
well as *Jarrett's Disappointment* was caveated by *Jesse
Jarrett.* It does not appear, however, on the exami-
nation of the recorrected certificate of *Contestable Ma-
nor*, that the surveyor has strictly pursued the direc-
tions of the chancellor's order for recorrection. It
appears on the contrary, that he has made out the re-
corrected certificate with attention to an order given
on another caveat, which in no manner related to the
order for recorrection, and in consequence thereof has
even made a beginning of *Contestable Manor*, different
from the beginning mentioned in *Calder's* (a) certifi-
cate of *Contestable Manor*, which he was directed to
pursue; and he has made out courses different from
the courses in the certificate, which he was directed to
recorrect, without assigning any reason for so doing.
*Jesse Jarrett* asserts, that the difference of courses
arises from the surveyor's pursuing certain calls in
*Calder's* certificate. If that be the case, the surveyor
ought to have certified, that the difference arose from
pursuing the calls in *Calder's* certificate. If also the
determination on the caveat of the certificate of *Bel-
grade* ought to have any influence on the certificate of
*Contestable Manor*, *Jesse Jarrett* ought to have applied
for a new order of correction. The chancellor, how-
ever, can confirm, when done, that which he might
originally have ordered to be done. If then the sur-
veyor will correct the recorrected certificate of *Con-
testable Manor*, by certifying that he has pursued the
calls of *Calder's* certificate, and that he hath laid down
the said tract of *Contestable Manor*, as by *James Cal-*

(a) The first certificate was returned by *James Calder*.

*der* certified to be laid down January 22d, 1789, except that he hath excluded such part thereof, as is contained in a tract of land called *Beautiful Plain,* patented to *Samuel Richardson,* and hath excluded likewise such part as is not contained in a certificate called *The Hills of Poverty,* and will likewise return the corrected certificate of *Contestable Manor,* which was endorsed to be recorrected, and will return the recorrected certificate also, along with the corrected certificate thereof, there will be no obstacle arising from the present caveat of *David West* to the said *Jesse Jarrett's* obtaining a patent for the land.

It is thereupon adjudged and ordered, that the surveyor of Harford county return a corrected certificate of the recorrected certificate of *Contestable Manor,* if he can do so consistently with truth and the duty of his office, agreeably to what is herein before suggested; and that he return likewise this certificate along with the corrected certificate of *Contestable Manor.*

That on the 8th of May 1797, the said *Jesse Jarrett* returned his said certificate again corrected, made on the 8th of May 1797, [*whereby Contestable Manor is laid down in two separate tracts, No. 1 containing 1302 acres more or less, and No. 2 containing 144 acres more or less—both together containing 1446 acres.*]

That the following memorandums were entered on the said certificate, to wit: "This certificate was lodged in the land office the 18th, 19th or 20th of May 1797, but not entered, because the propriety of receiving it as a *proper certificate,* depended on the chancellor's determination whether the order for the correction of *Contestable Manor* was complied with."

"Test, *Jno. Callahan,* Reg. L. O. W. S."

And on the 20th day of December 1797, the judge of the land office made the following remarks on the said certificate, to wit: "The chancellor passed an order in favour of *David West,* who could not correct his certificate of *Jarrett's Disappointment* within the nine months limited by law, unless *Jesse Jarrett,* with-

in a reasonable time, should return his recorrected certificate of *Contestable Manor*, to leave out every part of which *Jarrett's Disappointment* was to be corrected. The said order was, in effect, that unless the said recorrected certificate should be returned within four months, the said *West* should, on application, be entitled to a patent, notwithstanding the former order for correcting *Jarrett's Disappointment*. Just before the expiration of the four months, this certificate was returned, as a recorrected certificate of *Contestable Manor*, laid down agreeably to the orders passed, which directed no land to be included, that was not included in *The Hills of Poverty:* But the chancellor, on examination of the original certificate of *The Hills of Poverty*, and comparing it with this certificate, perceived plainly, as he then noted, that one of the courses of *The Hills of Poverty* was not pursued, and that the alteration made *The Hills of Poverty* contain more than it would do, if the course in the original had been pursued. He therefore, on *West's* application, allowed him the benefit of the order passed in his favour. It is now suggested by *Jarrett*, that the courses of *The Hills of Poverty*, and particularly the 19th line thereof, are entered in the surveyor's book as laid down in this certificate, and he produces a copy of the said courses, as so entered, under the surveyor's hand, which copy says, S. 32, W. It appears too on the face of the original certificate, which had been the only voucher to satisfy the chancellor relative to the courses of *The Hills of Poverty*, that the 19th course had been altered, both in the body and in the table, both saying S. 82, and that most probably it was at first S. 32, because, on scrutinizing the plot, it is discovered that lines have been erased, and that before the erasure, the 19th line was actually laid down S. 32, W. It is alleged also by *Jarrett*, that always in running *The Hills of Poverty*, and returning any certificate in which the same was contained or considered as a foundation of the survey, the said 19th line has been considered to be S. 32, W. What then can the chancellor do after the various transactions

which have taken place on the disputes relative to *Contestable Manor,* which it has not yet been in his power to settle? He conceives, from what is stated, and it is now admitted by *Jarrett,* that he could not, at the time of returning this certificate, consider it as a recorrected certificate of *Contestable Manor,* laid down agreeably to the several orders on the subject, all of which directed the same thing, viz. to let *Contestable Manor* contain no land not contained in *The Hills of Poverty.* But, inasmuch as it now appears to the chancellor, that the 19th line of *The Hills of Poverty* was really intended to be S. 32, W. and if so, that this certificate contains no land not comprehended in *The Hills of Poverty,* he conceives that it may be received, and stand as a certificate of *Contestable Manor,* recorrected, as it ought to be, until the contrary be regularly shewn, and that the period for which it is to stand is the day of its return."(a)

May 1800.

West
vs.
Hughes.

That on the 16th of March 1798, the said *Jarrett* obtained a patent upon the said last mentioned corrected certificate, for the land called *Contestable Manor No.* 1, and *Contestable Manor No.* 2. That the land in the said patent mentioned, and called *Contestable Manor No.* 2, is located on the plots in this cause.

*A grant issued on a certificate of survey of two separate tracts of land*

The defendants then prayed the opinion of the court, and their direction to the jury, that the contract aforesaid made by the said *Jesse Jarrett* with the intendant of the revenue, and the certificate aforesaid returned in virtue thereof, and the patent issued as aforesaid on the same, gave and vested a prior title to the land mentioned in the patent issued to the said *Jarrett.*

CHASE, Ch. J. The court are of opinion, that the patent obtained by *Jesse Jarrett* on the 16th of March 1798, operates by relation from the 11th of February 1789, the date of the certificate of the said *Jarrett* for the land called *Contestable Manor,* and vested the le-

(a) Memorandum made by the register—"The chancellor having by his note determined that this was to be considered as a proper certificate, and that the period from which it is to stand, is the day of its return, (which was on the 18th, 19th or 20th of May last, it was not liable to a caveat agreeably to a law after six months from such return. *John Callahan,* Reg. L. Off. W. S. December 20, 1797."

MAY, 1800.

West
vs.
Hughes.

gal title in the land, mentioned in the said patent, in the said *Jarrett*, on the said. 11th of February 1789.

The plaintiff excepted. Verdict and judgment for the plaintiff for all the land included in the patent of *Jarrett's Disappointment*, which is not included within the lines of the land called *Contestable Manor No. 2*, as located on the plots in this case returned, by the black dotted lines.

*A. Hall, Hollingsworth*, and *Mason*, for the plaintiff.

*Martin*, (Attorney General,) *Key* and *Johnson*, for the defendants.

The plaintiff and defendants both appealed to the Court of Appeals; and the judgment of the General Court was *affirmed* in both cases, at November term 1802, the Court of Appeals concurring with the General Court in the opinions expressed in both of the bills of exceptions.